Anne HORNFELD, Plaintiff,

v.

CITY OF NORTH MIAMI BEACH, an Incorporated City in Dade County, Florida, Defendants.

No. 98–0580–CIV.

United States District Court, S.D. Florida.

Aug. 3, 2000.

Paul A. Capua, Lorenoz & Capua, Miami, FL, Dorothy F. Easley, Pearson & Mayer, P.A., Coral Gables, FL, for plaintiff.

James C. Crosland, Denise Marie Heekin, Muller, Mintz, Kornreich, et al., Miami, FL, for defendants.

*ORDER DENYING DEFENDANT CITY'S SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION, ALTERNATIVE MOTION TO RECONSIDER DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT, AND CONSTITUTIONAL CHALLENGE TO THE ADEA; GRANTING MOTION TO STRIKE PLAINTIFF'S SUGGESTION OF RULE 11 SANCTIONS*

GOLD, District Judge.

THIS CAUSE is before the court upon Defendant City of North Miami Beach's Suggestion of Lack of Subject Matter Jurisdiction and Alternative Motion to Reconsider Defendant City's Motion for Sum-

mary Judgment [D.E. 130], filed on March 17, 2000, and Defendant's Motion to Strike Plaintiff's Suggestion of Rule 11 Sanctions [D.E. 177], filed on May 30, 2000. Oral arguments were heard by the court on July 7, 2000, after which the parties submitted additional authorities to the court.

The only remaining claim in this case is an alleged violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), by the City of North Miami Beach. The defendant's Suggestion of Lack of Subject Matter Jurisdiction challenges the constitutionality of the ADEA's application to municipalities based on the Supreme Court's decision in *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), together with other Supreme Court case law.

Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331, as arising under federal law. After careful consideration of the parties' arguments, the relevant case law, and the record as a whole, the court concludes that defendant's suggestion of lack of subject matter jurisdiction and alternative motion to reconsider the motion for summary judgment should be denied, that the challenge to the constitutionality of the ADEA is without basis, and that no sanctions are warranted for the filing of this motion.

## I. Factual and Procedural Background

Plaintiff Anne Hornfeld filed a three-count complaint on March 13, 1998 against the City of North Miami Beach and John Asmar, alleging violations of the Age Discrimination in Employment Act of 1967

(the "ADEA"), codified as amended at 29 U.S.C. § 621, *et seq.,* and 42 U.S.C. § 1983. The only remaining count of the Complaint is Count I, which alleges that the City of North Miami Beach (the "City") discriminated against plaintiff on the basis of age in violation of the ADEA.[1]

As was noted in the court's previous Order Denying Defendant's Motion for Summary Judgment [D.E. 108], plaintiff was employed by the Public Utilities Department of the City of North Miami Beach on a full-time basis from April 1986 until her acceptance of the City's early retirement incentive ("ERI") on June 1, 1996, at the age of 66. Plaintiff was initially hired as a Clerk Typist, and received promotions to Administrative Aide I in October, 1987, and to Administrative Assistant I in October, 1991.

In 1996, the City offered eligible employees in the general employees pension plan an Early Retirement Incentive, so long as the employees accepted the ERI by May 10, 1996. Prior to that date, mandatory meetings were held for all general employees eligible for the ERI to explain the incentive's benefits and provisions, which plaintiff attended. On May 1, 1996, plaintiff accepted the ERI. She chose the Life Only Annuity benefit which gave her an annual benefit of $9,126, plus a one time bonus of $1,365.38.

During this time period, the City was also considering merging its Departments of Public Works and Public Utilities into one department, a Public Services Department. Merger proposals from the two departments were due to the City Manager by April 15, 1996, three weeks before

---

1. Both Counts II and III were brought pursuant to 42 U.S.C. § 1983. Count II, alleging that the City violated plaintiff's equal rights secured by the Fourteenth Amendment of the U.S. Constitution, was voluntarily dismissed without prejudice by the plaintiff in response to the City's Motion for Summary Judgment [*see* D.E. 108, pp. 12–14]. Count III, in which plaintiff alleges similar violations of her right to equal protection under the laws by John Asmar in his individual capacity, was dismissed without prejudice on May 8, 2000 [D.E. 166]. The court denied the City's Motion for Summary Judgment with respect to Count I on December 2, 1999 [D.E. 108].

the early retirement deadlines. John Asmar, then the Acting Director of the City's Public Utilities Department, established a committee of Public Utilities Department employees to create the department's proposal. Plaintiff saw the April 5, 1996 proposal, in which her name did not appear, and also alleges that she had a subsequent conversation with Asmar wherein he told her she would not be part of the new department. Although the City Manager had stated at public meetings that the ERI would be reopened if an employee found that his or her position was eliminated by a reorganization, the City Manager would not confirm that position in writing with plaintiff.

The court's December 3, 1999 Order Denying Defendant's Motion for Summary Judgment analyzed Count I under the modified *McDonnell Douglas*[2] test for a reduction in force (RIF) situation,[3] finding that "plaintiff has created sufficient issues of material fact to preclude the granting of summary judgment in favor of the defendant City." D.E. 108, p. 16.

## II. Standard of Review

The Federal Rules of Civil Procedure direct that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Lack of jurisdiction cannot be waived, and jurisdiction cannot be conferred upon a federal court by con-

sent, inaction or stipulation. *Tuck v. United Services Auto. Ass'n,* 859 F.2d 842, 844 (10th Cir.1988). Once a federal court determines that it is without subject matter jurisdiction, it is incumbent upon the court to dismiss the case. *Univ. of South Ala. v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999).

## III. Discussion

### A. Subject Matter Jurisdiction

The defendant argues, based primarily on *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), that the ADEA was an invalid exercise of Congress' power. In support of this argument, defendant has asserted a novel legal theory that would require the court to read *Kimel* in conjunction with other Supreme Court precedent, such as *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) and *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), to find that the ADEA cannot constitutionally be extended to any state actor. In effect, defendant is asking this court to find that the Supreme Court has overruled *sub silentio* its prior decision in *Equal Employment Opportunity Commission v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) (holding the ADEA valid under the Commerce Clause). This court declines to make such a finding.

### 1. Power of the court to reconsider Supreme Court precedent

The Eleventh Circuit has taken a deferential approach to Supreme Court prece-

---

**2.** The *McDonnell Douglas* burden shifting formula requires the plaintiff to first establish a prima facie case of age discrimination. Once the plaintiff has established a prima facie case, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer does so, the burden shifts back to the plaintiff to show that the employer's asserted reason is mere pretext for discrimination. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993).

**3.** In such cases, the plaintiff must show (1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for the position held at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. *Zaben v. Air Products and Chemicals, Inc.,* 129 F.3d 1453, 1457 (11th Cir.1997)

dent, holding that it should be left to the Supreme Court to reconsider its own precedent, and not to the lower courts. *See In re: Employment Discrimination Litig. Against the State of Ala.,* 198 F.3d 1305, 1317 (11th Cir.1999) (*quoting Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) ("[I]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.")). In other circuits where subordinate courts have declined to follow a controlling Supreme Court decision, narrow exceptions were made when it became almost certain that more recent Supreme Court decisions or statutory changes had thoroughly eroded and rejected the prior precedent. *See, e.g., Rowe v. Peyton,* 383 F.2d 709, 714 (4th Cir.1967), *aff'd Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731, 734 (7th Cir.1986).

### 2. Fourteenth Amendment [4] Analysis

The Court in *Kimel* held that Congress' attempt to abrogate the states' sovereign immunity under the 11th Amendment in the ADEA was an invalid exercise of Congress' authority under § 5 of the Fourteenth Amendment. *See Kimel,* 120 S.Ct. at 645. The defendant acknowledges that the Eleventh Amendment does not apply to municipal governments, but argues that an analogy should be drawn to *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), and that based on that analogy, the implications of the Supreme Court's decision in *Kimel* extend beyond just states to cover municipalities.

*City of Boerne* involved a decision by local zoning authorities to deny a church a building permit. *City of Boerne,* 521 U.S. at 511, 117 S.Ct. at 2160. The church argued that the Religious Freedom and Restoration Act ("RFRA") effectively imposed a higher level of scrutiny on the conduct of any government actor in regard to certain religious activity than the Supreme Court had previously determined was appropriate. *See id.* Because of the all-encompassing nature of RFRA, the Supreme Court used the term "state law" to include local and municipal ordinances. *See City of Boerne,* 521 U.S. at 516, 117 S.Ct. at 2162. Ultimately, the Court concluded that Congress' imposition of RFRA's requirements on the states exceeded its power under § 5 of the Fourteenth Amendment. *City of Boerne,* 521 U.S. at 536, 117 S.Ct. at 2172.

The defendant argues that the legal analysis of RFRA in *City of Boerne* is substantially similar to the analysis of the AEDPA in *Kimel.* Because the specific conduct challenged in *City of Boerne* was a municipal ordinance, the defendant urges the court to apply the congruence and proportionality test, used in both *City of Boerne* and *Kimel,* to find *Kimel's* holding that the ADEA exceeded Congress' Fourteenth Amendment authority has significance beyond the Eleventh Amendment analysis. The defendant asks the court to take the "final step in the analysis" that the Court in *Kimel* did not reach because it was not before the Court: that the ADEA is invalid as to all state actors and as to all state and local government action because, as incongruent and disproportionate legislation under the congruence and proportionality test for the Fourteenth Amendment, the act also violates constitutional principles of federalism and state sovereignty.

---

**4.** The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. Amend. XIV § 1. The Amendment also empowers Congress "to enforce, by appropriate legislation, the provisions of this article." *Id.* § 5.

This position, however, is untenable for a number of reasons. First, the Supreme Court did not call into question the validity of the ADEA under Congress' Commerce Clause power in the *Kimel* decision. *See Kimel*, 120 S.Ct. at 642–43. The Court acknowledged that it had previously held in *EEOC v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) that the ADEA constitutes a valid exercise of the Commerce Clause power and that it did not transgress the Tenth Amendment, and then went on to analyze whether the ADEA could also be supported by Congress' power under § 5 of the Fourteenth Amendment. *Id.* This acknowledgment of controlling precedent from the Supreme Court is recent and carries considerable weight, particularly in light of the fact that the Court had the opportunity to overrule and address *EEOC v. Wyoming* in the *Kimel* decision but declined to do so. Lower courts, particularly district courts, must be cautious not to "embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." *Spector Motor Service v. Walsh*, 139 F.2d 809, 823 (2nd Cir.) (J. Hand, dissenting opinion), *vacated* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). In this case taking the 'final step in the analysis,' as the defendant urges this court to do, is for the Supreme Court, and not this court, to do.

■ Furthermore, the Supreme Court's finding that the ADEA constituted incongruent and disproportionate legislation under the congruence and proportionality test for the Fourteenth Amendment does not lead to the conclusion that the act is unconstitutional under all other provisions of the Constitution because it violates principles of federalism and state sovereignty. For example, in a decision decided subsequent to the *Kimel* decision, the Seventh Circuit found that the ADA constitutes invalid legislation under § 5 of the Fourteenth Amendment and does not abrogate the states' sovereign immunity, but, as valid legislation under the Commerce Clause, both private and public actors are bound by the statute. *See Erickson v. Bd. of Governors of State Colleges and Universities for Northeastern Illinois University*, 207 F.3d 945 (7th Cir. March 27, 2000). Indeed, the Seventh Circuit found that the ADA was even more "incongruent and disproportionate" than the ADEA and RFRA, but held that such a holding was limited to the Fourteenth Amendment analysis. A similar situation exists in this case, and defendant's proposed 'intuitive' jump is not warranted.

In addition, *City of Boerne* is distinguishable from the case at bar. In *City of Boerne*, the Court was careful to note that "Congress relied on its Fourteenth Amendment enforcement power in enacting the most far-reaching and substantial of RFRA's provisions, those which impose its requirements on the States." *City of Boerne*, 521 U.S. at 516, 117 S.Ct. at 2162. The Court does not mention whether the provisions at issue in *City of Boerne* are supportable by any other constitutional provisions, basing its analysis entirely on whether RFRA is a proper exercise of Congress' Fourteenth Amendment power. In contrast, the ADEA has been acknowledged by the Court to be valid Commerce Clause legislation.

### 3. Commerce Clause

Next, the defendant argues that *Kimel's* holding that the ADEA is invalid under the Fourteenth Amendment also means that the ADEA, as applied to state and local governments, is invalid under the Commerce Clause.

In support of this argument, defendant relies on an analogy to *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). *Printz* addressed the question of whether Congress had the power to pass a handgun control bill that

required state and local law enforcement officers to conduct background checks on prospective buyers. The defendant has highlighted language in *Printz* that says a law that "violates the principles of state sovereignty reflected in the various constitutional provisions mentioned earlier" [e.g., prohibition on any involuntary reduction or combination of a state's territory; Judicial Power Clause; Privileges and Immunities Clause; amendment provision; Guarantee Clause; Tenth Amendment; system of concurrent authority over citizens] is not a law necessary and proper for carrying out the Commerce Clause power. *Printz*, 521 U.S. at 923–24, 117 S.Ct. at 2379. The defendant goes on to say that *Kimel* did not reaffirm the holding in *EEOC v. Wyoming*; it merely acknowledged it. Defendant argues that *EEOC* is based on an outdated view of the Commerce Clause and state sovereignty that is not reflected in the current make-up of the court, and that this court should find that the Supreme Court has overruled *EEOC v. Wyoming sub silentio.*

As noted above in the discussion of the Fourteenth Amendment, it is the duty of this court to follow existing Supreme Court precedent, absent almost certain abrogation by later Supreme Court decisions or statutory changes. In this case, the court's decision is not difficult; the Supreme Court acknowledged in *Kimel* that the *EEOC v. Wyoming* decision controls for the proposition that the ADEA is valid legislation under the Commerce Clause. Absent further direction from the Supreme Court, the ADEA must be enforced against private and public actors. The only limitation is on suits by private individuals against the state in federal court where the state has not waived its sovereign immunity.

Further, an analogy to *Printz* and reliance on language in the opinion is mis-

placed because *Printz* is distinguishable from this case. Central to the decision in *Printz* was the court's characterization of the Brady Handgun Violence Prevention Act as a regulatory scheme that forced state and local officials to implement and enforce federal law. Such a conscription of state officials was the significant violation of state sovereignty and rights and rights that triggered the Court's finding that the Brandy Act was not necessary and proper to carry out the Commerce Clause. In contrast, this case involves municipal officials who allegedly forced one woman to retire because of her age; the facts stand in marked contrast to the situation presented to the Court in *Printz*.

## B. Reconsideration of the Defendant's Motion for Summary Judgment

Defendant argues that, even if the court finds that it has subject matter jurisdiction over this action, *Kimel* represents an intervening change in the law that 'radically altered' the applicable legal standard upon which the claim was decided in the summary judgment order. According to the defendant, *Kimel* establishes that the proper standard to be applied is the rational basis test and not the *McDonnell Douglas* test for a reduction in force (RIF) situation. *See supra* at p. 1360–61. Defendant's motion for reconsideration is based on the court's powers under Rule 54(b) of the Federal Rules of Civil Procedure to revise its orders prior to final judgment.[5]

The court is unconvinced by defendant's argument. Post–*Kimel* cases in the Supreme Court have applied the *McDonnell Douglas* burden-shifting formula to ADEA cases involving private actors, *see Reeves v. Sanderson Plumbing Prod., Inc.,*

---

**5.** Rule 54(b) states that any order that does not terminate all the claims or the rights and liabilities of all the parties is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b).

— U.S. ——, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000), and post-*Kimel* federal cases have applied the *McDonnell Douglas* test to ADEA cases involving public actors as well. *See, e.g., Sotolongo v. New York City Transit Authority*, 2000 WL 777958 at *2 (2nd Cir. June 15, 2000) (unpublished decision); *Armendariz v. City and County of Denver*, 208 F.3d 225, 2000 WL 305477 at *2 (10th Cir. March 24, 2000) (unpublished opinion); *Liggins v. State of Ohio*, 210 F.3d 372, 2000 WL 178420 at *2–3 (6th Cir. Feb.8, 2000) (unpublished decision); *Konewko v. Village of Westchester*, 2000 WL 1038125 at *9 (N.D.Ill. July 25, 2000). The Supreme Court in *Kimel* was conducting rational basis review of the ADEA itself, not redefining the legal standard for all claims under the ADEA involving state or local actors. Therefore, the court declines to reconsider its summary judgment order and denies defendant's alternative motion.

### C. Rule II Sanctions

Plaintiff's Response suggested that Rule 11 sanctions should be considered by the court, after which defendant moved to strike plaintiff's suggestion of Rule 11 sanctions. At oral argument counsel for plaintiff averred that they were not interested in pursuing Rule 11 sanctions in this matter. Furthermore, the court finds that defendant's suggestion of lack of subject matter jurisdiction was not presented for an improper purpose and did not present frivolous arguments.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant City of North Miami Beach's Suggestion of Lack of Subject Matter Jurisdiction and Alternative Motion to Reconsider Defendant City's Motion for Summary Judgment [D.E. 130] is DENIED. It is further

**ORDERED AND ADJUDGED** that Defendant's Motion to Strike Plaintiff's

Suggestion of Rule 11 Sanctions [D.E. 177] is GRANTED.